# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Carmine Joseph Bloise, Jr.,   )
                                )
Plaintiff, *pro se*,         )
                                )
vs.                             )
                                )
Allegheny County, a political )
subdivision of the )
Commonwealth of )
Pennsylvania, Detective )
Richard Venezia, Michael )
Szczypinski, Daniel Giegerich, )
Douglas Clark, Michael Bello, )
Joseph T. Thieret, Caitlin I. )
Miller, CSI Corporate Security )
and Investigations, LLC, )
Stephanie Elk, and Mark )
Santucci, )
                                )
Defendants.            )
                                )

Civil Action

Case No. 2:25CV2012

**COMPLAINT IN CIVIL ACTION**

**JURY TRIAL DEMANDED**

RECEIVED

DEC 29 2025

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

Filed on behalf of Plaintiff:
Carmine J. Bloise, Jr., *pro se*.
1102 Lenox Oval
Pittsburgh, PA 15237
412-667-0425
cbloise242@gmail.com

# COMPLAINT IN CIVIL ACTION
## TABLE OF EXHIBITS

| Ex | Title | Page |
|----|-------|------|
| A | Order Granting Carmine Bloise Sole Custody of J.B. (May 19, 2019) | 55-56 |
| B | Application for Emergency Protective Custody Filed by Defendant Caitlin I. Miller (a/k/a, "ECA") (May 1, 2025) | 57-61 |
| C | Lease Agreement between Carmine Bloise, Guy Jordan, and Defendant Mark Santucci (October 28, 2022) | 62-72 |
| D | Defendant Allegheny County Sheriff's Office Arrest Report (May 1, 2025) | 73-75 |
| E | Data Disc; Video file 2 minutes and 1 second in length (May 1, 2025) | 76 |

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carmine Joseph Bloise, Jr., | ) | Civil Action |
| | ) | |
| Plaintiff, *pro se*, | ) | Case No. _____ |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT IN CIVIL** |
| Allegheny County, et al. | ) | **ACTION** |
| | ) | |
| Defendants. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW, this 29th day of December, 2025, comes the Plaintiff, Carmine Joseph Bloise, Jr., *pro se* (hereinafter, "Plaintiff"), who respectfully submits this Complaint in Civil Action to recover damages and obtain appropriate equitable relief for the injuries and harm sustained as a result of Defendants' coordinated and unlawful intrusion into Plaintiff's home and family life—an operation that culminated in Plaintiff's arrest inside his locked residence, the displacement of Plaintiff's lawful co-tenant and caregiver, and the unlawful restraint and removal of J.B.—including the ensuing deprivation of Plaintiff's custodial rights and familial integrity and related harms, all in violation of

rights secured by the Constitution and laws of the United States and the Commonwealth of Pennsylvania, and in support thereof, aver as follows:

# I. INTRODUCTION

1. This action arises from a coordinated sequence of state action culminating on May 1, 2025, when Allegheny County Sheriff's Office ("ACSO") executed an arrest warrant at Plaintiff's home and, in the same operation, Allegheny County Office of Children, Youth, and Families ("ACOCYF") seized Plaintiff's nine-year-old daughter J.B. without lawful authority to do so.

2. The operation included:

   a. entry into Plaintiff's locked home using a key obtained from Plaintiff's landlord;

   b. interference with Plaintiff's home security camera;

   c. removal and detention affecting Plaintiff's co-tenant/roommate Guy Jordan; and

   d. ACOCYF's emergency custody filing and placement decisions made in the immediate aftermath,

notwithstanding Plaintiff's expressed direction that his child be released to his co-tenant and caregiver "Uncle Guy."

3. Plaintiff seeks damages and declaratory/injunctive relief for violations of the Fourth and Fourteenth Amendments, and related Pennsylvania common-law claims against the private actors and individual defendants.

4. Plaintiff demands trial by jury on all issues so triable.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the Complaint asserts claims under 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events occurred in Allegheny County, Pennsylvania, within this District.

## III. PARTIES

8. Plaintiff Carmine Joseph Bloise, Jr. is an adult individual domiciled in Pennsylvania. At all relevant times, Plaintiff held sole legal and physical custody of his minor daughter, J.B., pursuant to an Order entered May 19, 2019 (**Exhibit A**).

9. Defendant Allegheny County is a political subdivision of the Commonwealth of Pennsylvania and a county of the second class. Allegheny County operates, among other departments and agencies, the Allegheny County Sheriff's Office ("ACSO") and the Allegheny County Office of Children, Youth and Families ("ACOCYF"). At all times relevant, Allegheny County acted by and through its duly authorized officers, agents, employees, and/or assigns, including personnel of ACSO and ACOCYF, who were then and there acting within the course and scope of their duties and under color of state law, and pursuant to the customs, policies, practices, and/or directives of Allegheny County.

10. Defendants Richard Venezia, Michael Szczypinski, Daniel Giegerich, Douglas Clark, and Michael Bello were, at all relevant times, employees and/or agents performing

law-enforcement functions for Allegheny County. At all relevant times, each acted under color of state law. Each is sued in his individual capacity.

11.    Defendants Joseph T. Thieret and Caitlin I. Miller were, at all relevant times, employees and/or agents performing child welfare functions for Allegheny County, including through its Office of Children, Youth and Families. At all relevant times, each acted under color of state law. Each is sued in his/her individual capacity. Defendant Miller is identified as the agency supervisor/signatory on the May 1, 2025 Application for Emergency Protective Custody (a/k/a, "ECA") (**Exhibit B**).

12.    Defendant CSI Corporate Security and Investigations, LLC ("CSI") is a private entity engaged in investigative and security services.

13.    Defendant Stephanie Elk is an individual who, upon information and belief, acted as an investigator/agent for CSI and, upon information and belief, performed work in coordination with or at the direction of Allegheny County

personnel in connection with the events alleged herein. She

is sued in her individual capacity.

14.   Defendant Mark Santucci is the landlord and/or

rent-collection agent identified in Plaintiff's lease for the

residence at issue (**Exhibit C**). Upon information and belief,

Defendant Santucci provided access to Plaintiff's residence

by furnishing a key to law enforcement personnel and

communicated or caused communications asserting that

Plaintiff's co-tenant, Guy Jordan, was "evicted," which was

relied upon to exclude Jordan from the premises during the

events alleged herein.

## IV. FACTUAL ALLEGATIONS

## A. The leasehold, co-tenant rights, and landlord's role

15.   Plaintiff and Guy Jordan are the named "Tenant(s)" on the

written residential lease for 1230 Arkansas Ave., Dormont,

PA 15216 (**Exhibit C**).

16.   The lease provides that if either Tenant or the Landlord

wishes to end the lease, each must give the other thirty (30)

days written notice, and that for month-to-month tenancy

the 30-day notice period runs from the first day of the next month if notice is received after the first of the month.

17.  The lease also makes clear that even where the lease contains a waiver of "notice to quit," that waiver does not permit a court to enter judgment without an opportunity to present defenses in court—i.e., it does not authorize "self-help" eviction.

18.  On May 1, 2025, while ACSO executed an arrest warrant at the leased premises, ACSO personnel forced co-tenant Guy Jordan to leave the property based on communication from Defendant Mark Santucci, Plaintiff and Jordan's landlord, communicated at the scene by the Defendant Richard Venezia as: "The landlord says you're evicted."

19.  Plaintiff avers that no lawful eviction process had occurred and no 30-day written notice to end the tenancy had been provided as required by the lease (**Exhibit C**).

## B. Predicate events: private complaints and dependency filing

20.   By Order of Court dated May 19, 2019, Plaintiff was awarded primary legal and physical custody of J.B., and Mother was awarded supervised visitation once every two weeks (**Exhibit A**).

21.   Mother thereafter did not exercise contact with the child for approximately six years.

22.   On January 10, 2025, Plaintiff's former paramour, Christina Joy Dadey, acting as affiant, filed a private criminal complaint accusing Plaintiff of indirect criminal contempt of a PFA, which generated a warrant at docket FD-22-001447.

23.   On March 1, 2025, in coordination with the arrest warrant she had generated, Ms. Dadey filed an Application to File a Private Dependency Petition concerning Plaintiff's nine-year-old daughter, whom Ms. Dadey had not seen in three years, initiating a state court dependency action at CP-02-DP-0000113-2025 in the Allegheny County Court of Common Pleas (hereinafter, "ACCCP").

24.   On March 10, 2025, Administrative Judge Kathryn M. Hens-Greco of the ACCCP entered an order referring the private dependency petition to ACOCYF for investigation.

25.   On March 18, 2025, Plaintiff received a letter that later proved to be Ms. Dadey's purported service of her private dependency filing. Plaintiff returned the mailing unopened.

26.   On March 19, 2025, Ms. Dadey went to Pittsburgh Police Zone 8 and made a report characterizing Plaintiff's return mailing of her private dependency filing as a "PFA violation," while omitting that the returned package contained Ms. Dadey's own unopened mailing. Plaintiff avers this caused an additional warrant at FD-22-001447.

## C. ACOCYF engages a private investigator; coordination with ACSO

27.   On or before April 21, 2025, ACOCYF contracted with Stephanie Elk/CSI to surveil Plaintiff's residence and communicate with ACSO on ACOCYF's behalf (**Exhibit D**).

28.   Upon information and belief, on or about April 21, 2025, Detective Richard Venezia met with Ms. Elk and understood

she was privately contracted by ACOCYF to help locate
Plaintiff in connection with the warrants and the private
dependency petition involving Plaintiff's daughter (**Exhibit
D**).

29.  On April 24, 2025, Ms. Elk confronted and harassed
Plaintiff's co-tenant Guy Jordan outside the residence,
threatening that she would "call the Sheriff." Mr. Jordan
ignored the harassment and left.

## D. May 1, 2025: entry, camera interference, arrest, and child seizure

30.  On May 1, 2025, at 10:52 a.m., ACSO
personnel—including Detective Venezia, Szczypinski,
Giegerich, Sgt. Clark, and K-9 Deputy Bello—arrived at
Plaintiff's home to apprehend Plaintiff.

31.  Plaintiff avers the residence was locked and ACSO entered
using a key obtained from Defendant Mark Santucci.

*Figure 3*, Michael Szczypinski gesturing toward Plaintiff's security camera (*See* **Exhibit E**, data disc[1])

32.  Upon information, belief and security footage taken from Plaintiff's residence (*See* **Exhibit E**, data disc), before announcing themselves, Deputy Sheriff Michael Szczypinski took the liberty of modifying the curtilage of Plaintiff's home when he repositioned the front-porch security camera so

---

[1] *See* **Exhibit E, data disc:** Video file 2 minutes and 1 second in length, recorded May 1, 2025 (*See* recording ends due to repositioning by Michael Szczypinski; the camera ceases recording when motion is no longer detected).

that it no longer captured activity at the doorway, averting it toward the ceiling[2].



*Figure 4*, view after ACSO deputies modified its position, *See* **Exhibit E**, data disc.

---

[2] "The Fourth Amendment requires that police actions in execution of a warrant be **related to the objectives of the authorized intrusion**." *Wilson v. Layne*, 526 U.S. 603, 611 (1999) (emphasis added). By physically turning away Mr. Bloise's porch camera—an act wholly unrelated to arresting him—the deputies exceeded the scope of their arrest warrant and undermined the legitimacy of any subsequent knock-and-announce. When the live feed showed nothing but a ceiling, how could Mr. Bloise possibly know that the figures at his door were lawful officers rather than intruders?

33.   Thereafter, officers "knocked and announced"[3] their presence.

34.   The deputies then entered Plaintiff's fully-locked home with a key they had obtained from Plaintiff's landlord, Mark Santucci, and placed Plaintiff under arrest while his daughter, J.B. looked on. J.B. began screaming, and would not stop screaming for some time.

35.   After Plaintiff was detained, Detective Venezia contacted Stephanie Elk (who was already on scene surveilling Plaintiff's residence) and requested that she enter Plaintiff's home, and trespass within without Plaintiff's consent, to "assist" with J.B.

36.   Plaintiff avers ACSO unlawfully permitted this private investigator to trespass in Plaintiff's home and interact with J.B. against his wishes.

_____

[3] "The purposes of this requirement, known as the 'knock and announce rule,' are to prevent resistance by an occupant protecting his dwelling, to prevent violence and physical injury to the police and occupants, to protect an **occupant's privacy expectation against the unauthorized entry**, and to prevent property damage resulting from forced entry." *Commonwealth v. Goodis*, 299 A. 3d 1008, 1016 (Pa. Super 2023) (emphasis added).

37.   Ms. Elk contacted ACOCYF caseworker Joseph T. Thieret, who appears to have been waiting nearby in a vehicle, like Ms. Elk.

38.   Plaintiff expressed a clear and emphatic directive to Thieret that J.B. be released to Guy Jordan, whom the child calls "Uncle Guy," and who was present and available. Plaintiff avers he had sole legal and physical custody (**Exhibit A**) at the time and that Jordan was a stable caregiver known to the child.

39.   Instead, Thieret required the child to sit on the sidewalk and, in conjunction with his supervisor Caitlin I. Miller (via telephone), pursued emergency custody authority while ACSO simultaneously ordered Guy Jordan to leave the property based on Mark Santucci's assertion: "The landlord says you're evicted."

40.   At 12:34 p.m., after having made J.B. sit on the sidewalk with Thieret outside Plaintiff's residence for approximately an hour and a half, ACOCYF filed an Application for Emergency Protective Custody (a/k/a, "ECA") stating:

"[AC]OCYF is requesting an ECA for J.B. [Plaintiff],

who has primary[4] physical custody was arrested.

He identified family in [N]ew [J]ersey to care for

the child. There is a pending adjudicatory hearing

scheduled with the Honorable, Cathleen Bubash on

May 29, 2025." (**Exhibit B**)

41. Despite the ECA further asserting, "Reasonable efforts

were made to prevent the placement of the child and there

are no less restrictive alternatives available", this assertion is

false. But for Defendants' unconstitutional interference with

Plaintiff's custodial rights under the Constitution, J.B. would

have been released to Guy Jordan. Instead, Thieret and

Miller conspired to take advantage of the opportunity

presented by Plaintiff's arrest and abused their authority by

instructing J.B. to sit on the sidewalk for an extended period

---

[4] While **Exhibit A** uses the term "primary custody," that label is misleading without the context of the terms of the order: Ms. Bassler's only custodial entitlement was supervised contact. Accordingly, as a practical and legal matter, Plaintiff exercised sole, day-to-day legal and physical custody of J.B. under the order.

of time, until they secured a court order under false

pretenses.

42.   Plaintiff avers the Defendants' representations were

misleading by omission because they failed to disclose the

least restrictive alternative that was actually present at the

scene: release of the child to the in-state, co-tenant

caregiver, Guy Jordan, whom Plaintiff identified and

authorized in real time, and who had immediate capacity to

care for the child.

43.   Thieret overrode Plaintiff's directive and seized the child

into ACOCYF's custody, requiring J.B. to sit on the sidewalk

outside Plaintiff's home, constituting an unlawful seizure

under the color of law.

44.   Plaintiff avers that Thieret required the child to sit on the

sidewalk outside the home and that ACSO personnel

instructed Guy Jordan to leave, based on a statement

attributed to the landlord that Plaintiff was "evicted."

45.   Plaintiff avers that on the sidewalk, Thieret communicated

by phone with his supervisor, Caitlin Miller, to obtain

emergency custody authority and to communicate representations to the court.

46.  ACOCYF filed an Application for Emergency Protective Custody (a/k/a, "ECA") on May 1, 2025 in CP-02-DP-0000113-2025, which identifies Caitlin Miller as the supervisor/signatory and states, in substance, that father was arrested and "identified family in New Jersey to care for the child," and references a scheduled hearing before Judge Cathleen Bubash on May 29, 2025, while ACOCYF "continu[ed] to assess mother for placement."

47.  Plaintiff avers that notwithstanding the existence of a ready, known caregiver in Guy Jordan at the scene, ACOCYF proceeded with seizure and emergency custody steps that deprived Plaintiff of custody by refusing the on-scene, authorized caregiver alternative—the least restrictive option available—and instead pursuing emergency removal.

**E. Placement with biological mother notwithstanding known red flags**

48.   Plaintiff avers ACOCYF placed the child with biological mother Hannah Bassler, despite Ms. Bassler having not seen the child in **six years, had lost physical custody rights, and had conditions restricting contact absent supervision (Exhibit A)**.

49.   Plaintiff further avers that at the time of placement, Ms. Bassler had active legal problems (including a warrant for her own arrest, and a then-active PFA matter from Ms. Bassler's previous boyfriend), and that ACOCYF minimized or omitted that material information regarding those risks while presenting Ms. Bassler as the "best placement option."

50.   Plaintiff alleges that since placement, both Bassler and ACOCYF/Thieret have refused to comply with later non-discretionary court directives regarding evaluations and child access, resulting in contempt exposure.

## V. CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983
### Unreasonable Entry, Search, and Seizure; Unreasonable Manner of Warrant Execution (Fourth Amendment)

**Carmine Joseph Bloise, Jr.**

**v.**

**Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, and Michael Bello, individually.**

51.  Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

52.  At all relevant times, Defendants Venezia, Szczypinski, Giegerich, Clark, and Bello acted under color of state law as personnel of the Allegheny County Sheriff's Office.

53.  On May 1, 2025, these Defendants executed a residential arrest warrant at Plaintiff's locked home and entered the home using a key obtained from Plaintiff's landlord rather than obtaining consent or judicial authorization for entry by a third party.

54.  During the execution of the warrant, and before the entry was documented at the threshold, Defendant Szczypinski physically manipulated Plaintiff's security camera so that it no longer captured activity at the doorway, thereby impairing Plaintiff's ability to record and document government activity at the entrance to his home.

55.  Under the totality of the circumstances, the warrant was executed in an unreasonable manner, including but not limited to: (a) entry into the locked residence through landlord-facilitated access under circumstances alleged herein; and (b) the physical manipulation of Plaintiff's home-security equipment during the approach and entry so as to avert documentation of the doorway and threshold activity.

56.  Further, after Plaintiff was secured and while the Sheriff's Office maintained control over the residence and the scene, Defendant Venezia affirmatively requested, directed, and/or authorized a private investigator—Defendant Stephanie Elk—to enter Plaintiff's home and participate in the scene without Plaintiff's consent and without lawful basis to introduce a private actor into the interior of the home during the execution of the warrant. Defendants Giegerich, Clark, and Bello, while acting under color of state law and controlling the premises, knowingly permitted and acquiesced in this unauthorized third-party entry.

57.  By the foregoing conduct, Defendants deprived Plaintiff of rights secured by the Fourth Amendment, actionable under 42 U.S.C. § 1983.

58.  As a direct and proximate result, Plaintiff suffered damages including loss of privacy and security in his home, emotional distress, and consequential harms arising from the ensuing seizure of his child and disruption of his household.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages against the individual Defendants, costs, and such other relief as this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983
## Interference with Custody by Unreasonable On-Scene Removal / Continued Restraint (Fourteenth Amendment)

**Carmine Joseph Bloise, Jr.**
**v.**
**Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, Michael Bello, individually, Joseph T. Thieret, individually, and Caitlin I. Miller, individually.**

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff possessed a clearly established liberty interest in the care, custody, and control of his child, protected by the Fourteenth Amendment.

61. On May 1, 2025, immediately following Plaintiff's arrest, Defendants Thieret and Miller, acting under color of state law, intentionally interfered with Plaintiff's custodial rights by refusing to implement Plaintiff's express, contemporaneous directive that J.B. be released to Plaintiff's co-tenant and known caregiver, Guy Jordan, who was present on scene and immediately available.

62. Instead, Defendants maintained official control of the child at the scene while pursuing emergency custody authority, notwithstanding the availability of a less restrictive alternative authorized by the custodial parent.

63. Sheriff's Office personnel on scene, acting under color of state law, assisted in maintaining the conditions that made

release to the authorized caregiver impossible, including by

ordering Jordan to leave the premises based on an asserted

"eviction," thereby removing the only immediately available

caregiver Plaintiff had identified.

64.   Defendants' conduct was not narrowly tailored to a

legitimate child-safety necessity under the circumstances

alleged, and it foreseeably and directly resulted in the

deprivation of Plaintiff's custody and familial integrity.

65.   As a direct and proximate result, Plaintiff suffered

damages including loss of custody and companionship,

emotional distress, and consequential harms to be proven at

trial.

**WHEREFORE**, Plaintiff demands judgment for compensatory

damages, punitive damages against the individual Defendants to

the extent permitted by law, declaratory relief, costs, and such

other relief as this Court deems just and proper.

### COUNT III
### 42 U.S.C. § 1983
### Interference with Familial Association / Substantive Due Process (Fourteenth Amendment)

**Carmine Joseph Bloise, Jr.**

**v.**

**Detective Richard Venezia, individually, Michael
Szczypinski, individually, Daniel Giegerich, individually,
Douglas Clark, individually, Michael Bello, individually,
Joseph T. Thieret, individually, Caitlin Miller, individually,
CSI Corporate Security and Investigations, LLC, and
Stephanie Elk, individually.**

66.   Plaintiff incorporates by reference all preceding allegations
as if fully set forth herein.

67.   At all relevant times, Defendants Thieret and Miller acted
under color of state law as ACOCYF employees/supervisors.
Defendants Venezia, Szczypinski, Giegerich, Clark, and Bello
acted under color of state law as ACSO personnel.

68.   Plaintiff held primary legal and physical custody of J.B.
pursuant to a valid custody order.

69.   On May 1, 2025, after Plaintiff was taken into custody,
Plaintiff expressly identified and authorized an immediately
available, known, and stable caregiver on scene—his
co-tenant Guy Jordan ("Uncle Guy")—to take custody of J.B.
and care for her.

70.   Notwithstanding that least restrictive and immediately available caregiver alternative, Defendants Thieret and Miller, acting individually and in concert with the other Defendants, intentionally pursued a course of action designed to remove J.B. from Plaintiff's custody: they required J.B. to remain outside under official control, prevented her release to Jordan, and proceeded to seek emergency custody authority rather than implement the authorized, on-scene caregiver plan.

71.   Defendants' interference was not narrowly tailored to any legitimate child-safety necessity because (a) a custodially authorized caregiver was present and ready, and (b) Defendants chose restraint-and-removal tactics instead of the available less restrictive alternative.

72.   By intentionally overriding the custodial parent's directive and effectuating removal when a lawful, less restrictive, on-scene alternative existed, Defendants arbitrarily and unjustifiably interfered with Plaintiff's fundamental right to the care, custody, and companionship of his child, and

thereby interfered with Plaintiff's constitutionally protected familial integrity.

73.   As a direct and proximate result, Plaintiff suffered damages including loss of custody time and companionship, emotional distress, and consequential harms to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages against the individual Defendants, declaratory relief, and such other relief as this Court deems just and proper.

### **COUNT IV**
### **42 U.S.C. § 1983**
### **Procedural Due Process (Fourteenth Amendment)**

**Carmine Joseph Bloise, Jr.**

**v.**

**Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, Michael Bello, individually, Joseph T. Thieret, individually, Caitlin Miller, individually.**

74.   Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

75.  Plaintiff possessed a protected liberty interest in the care, custody, and control of his child, and in familial integrity, protected by the Fourteenth Amendment.

76.  On May 1, 2025, ACOCYF—through Defendants Thieret and Miller—deprived Plaintiff of his liberty interest by restraining his child under color of authority and effectuating emergency removal steps, while Plaintiff was unable to exercise custodial decisionmaking for his child.

77.  Critically, Plaintiff was not merely "unavailable" or "unable" to identify a caregiver: Plaintiff affirmatively identified and authorized an immediately available, in-state, known caregiver (Guy Jordan) who was present at the scene and ready to assume care at once.

78.  Despite that least restrictive alternative, Defendants maintained official control over J.B., delayed release, and proceeded to seek emergency custody authority instead of implementing the authorized caregiver plan—thereby converting an avoidable, short-term care arrangement into a forced emergency-custody process.

79.  By refusing to accommodate or implement the on-scene, custodially authorized caregiver alternative, Defendants deprived Plaintiff of meaningful process at the time of the seizure/removal decision, including a meaningful opportunity for his lawful custodial directive to be honored and for less restrictive measures to be employed.

80.  Defendants' actions therefore deprived Plaintiff of procedural due process under the Fourteenth Amendment.

81.  Plaintiff suffered damages as described above.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages against the individual Defendants, declaratory relief, and such other relief as this Court deems just and proper.

## COUNT V
## 42 U.S.C. § 1983
## Judicial Deception (Fourth Amendment, Fourteenth Amendment, *Franks v. Delaware*)

### Carmine Joseph Bloise, Jr.
### v.
### Joseph T. Thieret, individually, and Caitlin I. Miller, individually.

82.  Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

83.  On May 1, 2025, while J.B. was being restrained and held under ACOCYF's direction and control at the scene outside Plaintiff's residence, Defendant Joseph T. Thieret—acting under color of state law—initiated, prepared, and/or caused to be prepared an Application for Emergency Protective Custody (a/k/a, "ECA") in CP-02-DP-0000113-2025, and communicated the factual basis for that application to the Court.

84.  At all relevant times, Defendant Caitlin I. Miller—acting under color of state law as Thieret's supervisor—reviewed, approved, authorized, and/or executed the EPC application as the supervisor/signatory, and thereby adopted and caused the submission of the representations and omissions described herein.

85.  At the time Defendants sought and caused the submission of the EPC application, Plaintiff had already identified and expressly authorized an immediately available, in-state,

least restrictive caregiver—his co-tenant Guy Jordan—who was present at the scene, known to the child, and able to assume custody at once.

86.   Nonetheless, the EPC submission represented, in substance, that Plaintiff "identified family in [N]ew [J]ersey to care for the child," and further asserted that "there are no less restrictive alternatives available," while omitting the materially significant fact that Plaintiff had authorized and identified a present, in-state caregiver (Guy Jordan) who was ready and available at the scene.

87.   These omissions and misleading representations were material to the Court's emergency-custody determination because the availability of an immediately present, safe, custodially authorized caregiver bears directly on whether emergency removal is necessary and whether less restrictive alternatives exist.

88.   Defendants made and/or caused these representations and omissions knowingly, intentionally, and/or with reckless disregard for the truth, and did so for the purpose and

foreseeable effect of obtaining emergency custody authority that would not have been sought or would have been less likely to be granted had the Court been provided a complete and accurate account of the scene and the available least restrictive alternative.

89.   But for Defendants' materially misleading omissions and representations, emergency custody authority was less likely to have been sought or granted, Plaintiff's lawful custodial directive would have been implemented, and emergency removal would have been unnecessary.

90.   By this judicial deception—i.e., procuring or attempting to procure emergency custody authority through material misrepresentations and omissions—Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment, actionable under 42 U.S.C. § 1983.

91.   Plaintiff suffered damages as described above.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages against

the individual Defendants, declaratory relief, costs, and such

other relief as this Court deems just and proper.

## COUNT VI
## 42 U.S.C. § 1983
## Conspiracy / Joint Action to Deprive Constitutional Rights
## (Fourteenth Amendment)

**Carmine Joseph Bloise, Jr.**
**v.**
**Detective Richard Venezia, individually, Michael
Szczypinski, individually, Daniel Giegerich, individually,
Douglas Clark, individually, Michael Bello, individually,
Joseph T. Thieret, individually, Caitlin Miller, individually,
CSI Corporate Security and Investigations, LLC, and
Stephanie Elk, individually.**

92.   Plaintiff incorporates by reference all preceding allegations

as if fully set forth herein.

93.   Plaintiff avers that ACOCYF engaged CSI/Elk to surveil

Plaintiff's home and to coordinate with ACSO to effectuate

the arrest and the child seizure in the same operation.

94.   Plaintiff further avers that ACSO and ACOCYF personnel

coordinated on May 1, 2025 to control the scene, permit

Elk's entry into Plaintiff's home, require the child to remain

outside, and remove the child from Plaintiff's custody.

95.   CSI and Elk participated in this coordinated conduct and thereby acted jointly with state actors and under color of state law for purposes of § 1983.

96.   The purpose and effect of this concerted action was to deprive Plaintiff of rights secured by the Fourth and Fourteenth Amendments.

97.   Plaintiff suffered damages as described above.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages as permitted (against non-municipal defendants), costs, and such other relief as this Court deems just and proper.

<u>**COUNT VII**</u>
**42 U.S.C. § 1983**
**Policy/Custom; Failure to Train/Supervise; Ratification**
**(Municipal Liability, *Monell*)**

**Carmine Joseph Bloise, Jr.**
**v.**
**Allegheny County**

98.   Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

99.   At all relevant times, Allegheny County acted through its policymakers and through its departments and personnel, including the Allegheny County Sheriff's Office and Sheriff's Office personnel involved in the May 1, 2025 operation.

100. Plaintiff avers that the constitutional violations alleged herein were caused by Allegheny County's policies, customs, and/or practices, including, without limitation, policies/customs/practices implemented, tolerated, or ratified through the Sheriff's Office, such as:

  a. executing warrant operations at residences in a manner that unreasonably invades the privacy of the home and its curtilage;

  b. interfering with or manipulating resident security equipment during warrant execution and/or otherwise impeding documentation of government entry and activity at the threshold of the home;

  c. facilitating, encouraging, or participating in landlord "self-help" eviction dynamics at the scene, including ordering or forcing lawful occupants/co-tenants to leave

based on a landlord's assertion of "eviction" absent legal process; and/or

d. permitting private investigators or private actors to enter and participate inside a residence during a warrant operation without lawful basis, consent, or adequate safeguards.

101. Alternatively and/or additionally, Plaintiff avers that Allegheny County failed to adequately train, supervise, discipline, and/or monitor Sheriff's Office personnel regarding lawful residential warrant execution, the handling of resident recording/security equipment, the prohibition against assisting in extra-judicial evictions, and the limits on allowing private actors into homes during law enforcement operations; and that such failures constituted deliberate indifference to the rights of persons with whom Sheriff's Office personnel would foreseeably come into contact.

102. Plaintiff further avers that Allegheny County ratified the unlawful conduct described herein by approving, condoning,

or failing to correct and remediate known deficiencies,
thereby encouraging repetition.

103. As a direct and proximate result of Allegheny County's
policies, customs, practices, failures, and/or ratification,
Plaintiff suffered damages as alleged.

**WHEREFORE**, Plaintiff demands judgment against Allegheny
County for compensatory damages, declaratory relief, costs, and
such other relief as this Court deems just and proper.

**<u>COUNT VIII</u>**
**42 U.S.C. § 1983**
**Policy/Custom; Failure to Train/Supervise; Ratification**
**(Municipal Liability, *Monell*)**

**Carmine Joseph Bloise, Jr.**
**v.**
**Allegheny County**

104. Plaintiff incorporates by reference all preceding allegations
as if fully set forth herein.

105. At all relevant times, Allegheny County acted through its
policymakers and through its departments and personnel,
including the Allegheny County Office of Children, Youth, and

Families ("ACOCYF") and ACOCYF employees/supervisors involved in the May 1, 2025 emergency custody actions.

106. Plaintiff avers that the constitutional violations alleged herein were caused by Allegheny County's policies, customs, and/or practices, including, without limitation, policies/customs/practices implemented, tolerated, or ratified through ACOCYF, such as:

    a. emergency removal and emergency custody practices that disregard readily available, less restrictive alternatives—particularly where the custodial parent identifies and authorizes an immediately available, known, and safe caregiver at the scene;

    b. procurement of emergency custody authority through incomplete, misleading, and/or materially omitted submissions to the court concerning the availability of less restrictive alternatives and the true circumstances at the scene;

    c. placement decision practices that fail to adequately account for known legal and safety red flags, and/or

that minimize or omit those red flags in

communications and submissions justifying placement;

and/or

d. inadequate training, supervision, and oversight of

caseworkers and supervisors regarding lawful

emergency-custody decisionmaking, truthful and

complete court submissions, and the constitutional

limits governing child seizure/removal.

107. Alternatively and/or additionally, Plaintiff avers that

Allegheny County failed to adequately train, supervise,

discipline, and/or monitor ACOCYF caseworkers and

supervisors in these core areas; that such failures

constituted deliberate indifference to the rights of parents

and children; and that these failures foreseeably resulted in

the deprivation of Plaintiff's constitutional rights as alleged

herein.

108. Plaintiff further avers that Allegheny County ratified the

unlawful conduct described herein by approving, condoning,

or failing to correct and remediate known deficiencies,
thereby encouraging repetition.

109. As a direct and proximate result of Allegheny County's
policies, customs, practices, failures, and/or ratification,
Plaintiff suffered damages as alleged.

**WHEREFORE**, Plaintiff demands judgment against Allegheny
County for compensatory damages, declaratory relief, costs, and
such other relief as this Court deems just and proper.

## COUNT IX
## 42 U.S.C. § 1983
### Failure to Intervene / Bystander Liability (Fourth and Fourteenth Amendments)

**Carmine Joseph Bloise, Jr.**
**v.**
**Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, Michael Bello, individually, Joseph T. Thieret, individually, Caitlin Miller, individually, CSI Corporate Security and Investigations, LLC, and Stephanie Elk, individually.**

110. Plaintiff incorporates by reference all preceding allegations
as if fully set forth herein.

111. At all relevant times, the Defendant officers named in this Count acted under color of state law as personnel of the Allegheny County Sheriff's Office and were present at, and participated in controlling, the May 1, 2025 warrant-execution scene at Plaintiff's residence.

112. Plaintiff avers that one or more constitutional violations occurred in these officers' presence and with their knowledge, including, inter alia:

   a. Unreasonable manner of warrant execution / home entry dynamics, including use of a landlord-provided key to enter a locked residence and the contemporaneous manipulation of Plaintiff's security camera;

   b. Unreasonable third-party entry into the home, including the entry of Defendant Elk into Plaintiff's residence after Plaintiff was taken into custody and while officers maintained control of the premises; and/or

   c. Interference with Plaintiff's familial integrity and custodial directive at the scene, including the

restraint/continued control of J.B. and the creation or

maintenance of conditions that prevented release of

J.B. to the custodially authorized, immediately available

caregiver Plaintiff identified (Guy Jordan), including by

ordering or forcing Jordan to leave based on an

asserted "eviction."

113. Plaintiff avers that each Defendant officer named in this

Count had a realistic and reasonable opportunity to

intervene to prevent or stop the unconstitutional conduct

described above—because these officers were on scene,

were part of the law-enforcement team controlling access

and the premises, and had the ability to object, halt, refuse

assistance, or otherwise prevent continuation of the unlawful

acts/conditions.

114. Notwithstanding that opportunity, each Defendant officer

named in this Count failed to intervene, thereby enabling the

unconstitutional conduct to occur and/or continue.

115. By reason of the foregoing, these Defendant officers are

liable under 42 U.S.C. § 1983 for their failure to intervene to

prevent violations of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

116. As a direct and proximate result, Plaintiff suffered damages including loss of privacy and security in his home, emotional distress, and consequential harms arising from the ensuing disruption of his household and deprivation of custody/familial integrity.

WHEREFORE, Plaintiff demands judgment against the Defendants named in this Count for compensatory damages, punitive damages, costs, and such other relief as this Court deems just and proper.

## **COUNT A**
**Trespass to Land (Pennsylvania Common Law)**

**Carmine Joseph Bloise, Jr.**
**v.**
**CSI Corporate Security and Investigations, LLC, and
Stephanie Elk, individually**

117. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

118. Defendant Elk, acting for CSI and/or in concert with

ACOCYF/ACSO, entered upon and/or remained within

Plaintiff's property and home without Plaintiff's consent and

without lawful privilege.

119. Plaintiff suffered damages including invasion of

possessory rights and emotional distress.

**WHEREFORE**, Plaintiff demands judgment against CSI and Elk

for compensatory damages, punitive damages as permitted, and

such other relief as this Court deems just and proper.

### COUNT B
**Trespass to Chattels (Pennsylvania Common Law)**

**Carmine Joseph Bloise, Jr.**
**v.**
**Detective Richard Venezia, individually, Michael**
**Szczypinski, individually, Daniel Giegerich, individually,**
**Douglas Clark, individually, Michael Bello, individually**

120. Plaintiff incorporates by reference all preceding allegations

as if fully set forth herein.

121. Defendants intentionally interfered with Plaintiff's

possessory interest in his security camera by physically

repositioning it to prevent it from capturing the doorway and to avert it toward the ceiling.

122. Plaintiff suffered damages including impairment of the security function of the device and consequential harms.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages as permitted, and such other relief as this Court deems just and proper.

## COUNT C
### Interference with Custody and Parental Rights
### (Pennsylvania Common Law)

**Carmine Joseph Bloise, Jr.**
**v.**
**Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, Michael Bello, individually, Joseph T. Thieret, individually, Caitlin Miller, individually, CSI Corporate Security and Investigations, LLC, and Stephanie Elk, individually.**

123. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

124. Plaintiff had lawful custody rights to his child pursuant to a custody order.

125. Defendants intentionally interfered with Plaintiff's lawful custody by preventing release of the child to Plaintiff's authorized caregiver on scene and by effectuating removal and continued deprivation.

126. Plaintiff suffered damages including loss of custody time, emotional distress, and consequential harms.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages as permitted, and such other relief as this Court deems just and proper.

### COUNT D
### Abuse of Process (Pennsylvania Common Law)

### Carmine Joseph Bloise, Jr.
### v.
### Joseph T. Thieret, individually, and Caitlin I. Miller, individually.

127. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

128. Defendants used emergency custody process for a purpose and in a manner not contemplated by law—namely,

to obtain custody control while omitting the availability of an
on-scene, less restrictive caregiver alternative and by
pursuing removal despite Plaintiff's express direction and the
child's immediate safety needs being addressable without
removal.

129. Defendants' use of process was primarily to achieve an
end beyond the proper scope of emergency custody process,
and caused harm to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against these
Defendants for compensatory damages, punitive damages as
permitted, and such other relief as this Court deems just and
proper.

## <u>COUNT E</u>
### Negligent Infliction of Emotional Distress (NIED)

### Carmine Joseph Bloise, Jr.
### v.
### Detective Richard Venezia, individually, Michael
### Szczypinski, individually, Daniel Giegerich, individually,
### Douglas Clark, individually, Michael Bello, individually,
### Joseph T. Thieret, individually, Caitlin Miller, individually,
### CSI Corporate Security and Investigations, LLC, and
### Stephanie Elk, individually, and Mark Santucci.

130. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

131. Defendants' conduct foreseeably caused Plaintiff severe emotional distress, including distress arising from witnessing law enforcement and ACOCYF actions in the presence of Plaintiff's child and the ensuing deprivation of custody.

132. Plaintiff suffered severe emotional distress and related damages.

133. WHEREFORE, Plaintiff demands judgment for compensatory damages and such other relief as this Court deems just and proper.

## <u>COUNT F</u>
### Tortious Interference with Contract (Pennsylvania Common Law)

### Carmine Joseph Bloise, Jr.
### v.
### Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, Michael Bello, individually, and Mark Santucci.

134. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

135. Plaintiff and co-tenant Guy Jordan held enforceable contractual tenancy rights under the lease for 1230 Arkansas Ave.

136. On May 1, 2025, Defendant Santucci's representation to law enforcement that Plaintiff and/or Jordan were "evicted," and Defendants' reliance on that representation to force Jordan from the premises, intentionally interfered with the co-tenants' ongoing contractual rights of occupancy and performance under the lease.

137. No lawful eviction process had occurred and no contractually required written notice to end the tenancy had been provided.

138. Plaintiff suffered damages including disruption of the household, interference with an available caregiving plan for his child, and consequential harms.

**WHEREFORE**, Plaintiff demands judgment against these Defendants for compensatory damages, punitive damages as permitted, and such other relief as this Court deems just and proper.

## COUNT G
**Wrongful Eviction / Breach of Lease / Breach of Quiet Enjoyment (Pennsylvania Common Law)**

**Carmine Joseph Bloise, Jr.**
**v.**
**Mark Santucci.**

139. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

140. Plaintiff and Guy Jordan were lawful co-tenants with contractual rights to possess and occupy the premises.

141. Defendant Santucci, directly and/or through statements and actions taken on May 1, 2025, caused a de facto eviction/ouster dynamic and interference with Plaintiff's and Jordan's occupancy without lawful process and contrary to the lease's notice requirements.

142. Plaintiff suffered damages including loss of quiet enjoyment, disruption of household stability, and consequential harms.

**WHEREFORE**, Plaintiff demands judgment against Santucci for compensatory damages, punitive damages as permitted, and such other relief as this Court deems just and proper.

## VI. EQUITABLE RELIEF

### COUNT H
### Declaratory / Injunctive Relief

**Carmine Joseph Bloise, Jr.**
**v.**
**Detective Richard Venezia, individually, Michael Szczypinski, individually, Daniel Giegerich, individually, Douglas Clark, individually, Michael Bello, individually, Joseph T. Thieret, individually, Caitlin Miller, individually, CSI Corporate Security and Investigations, LLC, and Stephanie Elk, individually, and Mark Santucci.**

143. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

144. An actual, justiciable controversy exists regarding the legality and constitutionality of the conduct alleged, and Plaintiff lacks an adequate remedy at law for ongoing effects and to prevent repetition.

145. Plaintiff seeks:

a. a declaration that Defendants' conduct violated Plaintiff's Fourth and Fourteenth Amendment rights;

b. injunctive relief requiring preservation of all body-worn camera, dash camera, dispatch audio, ACOCYF notes/communications, and related recordings and metadata concerning May 1, 2025; and

c. such further injunctive relief as is narrowly tailored to prevent recurrence of the specific practices alleged herein.

**WHEREFORE**, Plaintiff requests declaratory and injunctive relief and such other relief as this Court deems just and proper.

Respectfully submitted,

Electronically
Signed 12/29/25

Carmine Joseph Bloise, Jr., Plaintiff, *pro se*

## <u>VERIFICATION</u>

I verify that the statements made in this Complaint in Civil Action are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Electronically
Signed 12/29/25

Carmine Joseph Bloise, Jr., Plaintiff, *pro se*

| 1 | Allegheny County | 445 Fort Pitt Blvd, Suite 300 Pittsburgh, PA 15219 |
|---|---|---|
| 2 | Detective Richard Venezia | 436 Grant Street, Room 111 Pittsburgh, PA 15219 |
| 3 | Michael Szczypinski | 436 Grant Street, Room 111 Pittsburgh, PA 15219 |
| 4 | Daniel Giegerich | 436 Grant Street, Room 111 Pittsburgh, PA 15219 |
| 5 | Douglas Clark | 436 Grant Street, Room 111 Pittsburgh, PA 15219 |
| 6 | Michael Bello | 436 Grant Street, Room 111 Pittsburgh, PA 15219 |
| 7 | Joseph T. Thieret | 1201 Monongahela Blvd White Oak, PA 15131 |
| 8 | Caitlin I. Miller | 100 Elmore Road Pittsburgh, PA 15221 |
| 9 | CSI Corporate Security and Investigations, LLC | 3645 Brodhead Road Monaca, PA 15061 |
| 10 | Stephanie Elk | 3645 Brodhead Road Monaca, PA 15061 |
| 11 | Mark Santucci | P.O. Box 101226 Pittsburgh, PA 15237 |